UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA STONE,

    Plaintiff,

                                            Case No.
                                            Hon.

    vs.

BEHAVIOR FRONTIERS, LLC,
a California corporation,

    Defendant.

---

Danielle Y. Canepa (P82237)
Channing E. Robinson-Holmes (P81698)
Michael L. Pitt (P24429)
Pitt McGehee Palmer Bonanni & Rivers
Attorneys for Plaintiff
117 W. 4th Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
dcanepa@pittlawpc.com
crobinson@pittlawpc.com
mpitt@pittlawpc.com

---

## WHISTLEBLOWER COMPLAINT AND JURY DEMAND

Plaintiff Samantha Stone provided therapy to children with autism at the Autism Center in Detroit operated by Defendant Behavior Frontiers. When she reported another staff member to the State of Michigan Office of Recipient Rights for choking and kicking a seven-year-old child, company leadership questioned her about her report. Then Behavior Frontiers held a compliance "training" to instruct staff that instead of filing their own report as required by law, they were required to direct any reports through HR or the Clinical Director, who would decide whether to share

reports with law enforcement or state agencies. The Chief Compliance and People Officer fired Stone immediately after verifying that Stone had indeed filed a report without "permission" and cited this violation of "internal protocol" as the reason for her termination.

Behavior Frontiers fired Stone because she reported credible information about assault of a child to the Office of Recipient Rights, in compliance with her legal duties as a mandatory reporter, but in violation of the Company's "internal protocol" that employees were required to direct mandatory reports through leadership, who would decide whether to submit the report.

Stone brings this action for retaliatory discharge against Defendant Behavior Frontiers under the Americans with Disabilities Act (ADA) 42 USC § 12101 et seq., Section 504 of the Rehabilitation Act ("Section 504"), 29 USC § 701 et seq., and the Michigan Whistleblowers' Protection Act (WPA), MCL 15.361 et seq.

## JURISDICTION AND VENUE

1. This action arises under the laws of the United States pursuant the Americans with Disabilities Act (ADA), 42 USC § 12101 et seq. and Section 504 of the Rehabilitation Act ("Section 504"), 29 USC § 701 et seq., and the Michigan Whistleblowers' Protection Act (WPA), MCL 15.361 et seq.

2. This Court has jurisdiction over Stone's federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), 42 USC § 12101 et seq., and 29 USC § 701 et seq.

3. This Court should exercise supplemental jurisdiction over Stone's state law claim pursuant to 28 U.S.C. § 1367 because her whistleblower claim arises out of

the same facts as the federal claims and all claims are part of the same case or controversy.

4. Venue is proper pursuant to 28 U.S.C. § 1391(d) because all facts alleged in this Complaint took place in Detroit, Michigan, located in Oakland County, and the parties reside in the Eastern District of Michigan.

## PARTIES

5. Plaintiff Samantha Stone ("Plaintiff" or "Stone") is a resident of Wayne County, Michigan.

6. Defendant Behavior Frontiers ("Defendant" or "Behavior Frontiers") is a California-based business that owns and operates an Autism Center in Detroit, Michigan.

7. Behavior Frontiers provides applied behavior analysis (ABA) services, a specialized behavioral therapy for children who have been diagnosed on the autism spectrum.

8. At all relevant times, Behavior Frontiers received funding from the State of Michigan through Detroit Wayne Integrated Health Network, which is part of the Michigan Department of Health and Community Services.

9. At all relevant times, Behavior Frontiers provided services to Medicaid recipients.

10. At all relevant times, Behavior Frontiers was a recipient of federal funds.

3

## STATEMENT OF FACTS

11. Plaintiff Samantha Stone is a Board-Certified Behavior Analyst (BCBA) for children and adults with behavioral challenges.

12. Stone has over a decade of experience providing counseling and working with vulnerable children and young people.

13. Since 2016, Stone has worked closely as a behavioral therapist with children with Autism and their families.

14. Stone began working with Defendant Behavior Frontiers as a Behavior Supervisor on September 21, 2022 at the Autism Center in Detroit.

15. As a BCBA at the Behavior Frontiers Autism Center, Stone's duties included evaluating children referred to the clinic, providing behavioral therapy to children on her caseload, supervising care and therapy provided by Behavior Technicians, meeting with clients and families, and supervising all care for children whose families had contact with Child Protective Services.

16. Stone reported to Jennie McDaniels ("McDaniels"), the Clinical Director of the Autism Center.

17. All of the clients at the Autism Center were children under the age of 18.

18. A majority of clients at the Autism Center received healthcare coverage through Medicaid.

19. Autism, also called Autism spectrum disorder (ASD), is characterized by challenges with social interactions, repetitive behaviors, speech and nonverbal communication that can cause social, communication and behavioral challenges.

4

Autism is often accompanied by sensory sensitivities and medical issues such as gastrointestinal (GI) disorders, seizures or sleep disorders, as well as mental health challenges such as anxiety, depression and attention issues.[1]

20. Many children at the Autism Center are nonverbal or have communication challenges.

21. Because of their condition, children at the Autism Center were incredibly vulnerable to abuse.

22. Trauma can exacerbate symptoms of Autism or trigger new symptoms, including developmental skills regression and severe emotional and behavioral dysregulation.

### Behavior Frontiers Failed to Train Employees on State Reporting Duties

23. The State of Michigan recognizes this vulnerability by imposing mandatory reporting requirements for mental health professionals who work with recipients of mental health services. MCL § 330.1723.

24. The Office of Recipient Rights is the division of the Michigan Department of Health and Human Services that investigates suspected abuse, neglect, and exploitation of a recipient of public mental health services in Michigan.

25. The Office of Recipient Rights provides instructions on its website and multiple methods for reporting, including a telephone hotline, in person offices, and online complaint forms.

---

[1] See Autism Speaks, *What is Autism?* https://www.autismspeaks.org/what-autism (accessed Jun. 27, 2023).

26. Despite these guidelines, Behavior Frontiers did not instruct employees, including Stone, how to file Recipient Rights complaints in their training.

27. Behavior Frontiers does not mention reporting to any Michigan agency or Michigan law enforcement authority in their Employee Handbook.

28. Stone was familiar with reporting duties based on her prior employment and professional certification.

### March 21, 2023: Behavior Frontiers Does Nothing After Notice of Physical Abuse of Autistic Child

29. On March 21, 2023, a Behavior Technician ("Employee A") physically assaulted a seven-year-old child with autism. Employee A put her hands around the child's throat, choking them, and kicked them.

30. Another Behavior Technician ("Employee B") reported the assault to Clinical Director Jennie McDaniels the same day.

31. Both Clinical Director McDaniels and Peaches Brownwell, the supervising BCBA assigned to the client, were aware of the incident but did not take any steps to intervene, discipline Employee A, report the incident, inform the parents, separate the child from Employee A, or otherwise assist the child.

### March 22, 2023: Employee B Files Recipient Rights Report

32. On March 22, 2023, Employee B informed Stone about the physical assault of a child at the Autism Center the previous day.

33. Employee B informed Stone that she would file a Recipient Rights report.

34. Employee B did in fact file a Recipient Rights complaint.

6

### March 24, 2023: Stone Files Recipient Rights Report

35. Following her mandatory duty, Stone then filed her own report on March 24, 2023 through the Recipient Rights hotline.

36. Stone spoke with Recipient Rights investigator Sherry Underwood.

37. Stone reported the assault of the child as told to her and the failure to report by the supervisors, including the assigned BCBA and Clinical Director.

38. When Stone called Recipient Rights, the investigator informed Stone that they had not received a report from any other employee at Behavior Frontiers other than Stone and Employee B.

39. Recipient Rights instructed Stone that she did not need to report the incident to CPS or any other agency because they said they would refer the information to other relevant agencies.

40. The same day, Stone met with Clinical Director McDaniels and informed her that she had filed the Recipient Rights report.

### March 24, 2023: Behavior Frontiers Attempts to Conceal Abuse and Block Mandatory Reports

41. Later the same day, March 24, 2023, Employee B told Stone that Dan Matas ("Matas") (Chief Compliance and People Officer) had emailed Sandra Bryant ("Bryant") (Head Administrator) to erase video of the assault.

42. Employee B further told Stone that when Bryant refused to delete the video, HR removed her access to the video system.

43. On March 24, 2023, Stone called Recipient Rights again to report that the video of the incident might be moved or destroyed.

7

44. Investigator Underwood visited the Autism Center on March 28, 2023 and secured a copy of the video of the incident.

### March 30, 2023: Head of HR Improperly Instructs Staff Not to Follow Mandatory Reporting Procedures

45. Approximately one week after Stone made her Recipient Rights report, on or about March 30, 2023, Matas held a zoom meeting and instructed BCBAs at the Autism Center not to report incidents of suspected abuse despite the mandatory reporting laws.

46. Matas instead instructed the BCBAs that they were required to consult with HR or the Clinical Director about any complaints or reports, who would then decide whether to report.

47. Matas did not provide any information for employees to comply with mandatory reporting requirements themselves, such as contact information for Recipient Rights.

48. The same day, Stone informed Recipient Rights Investigator Underwood about the training that directed staff to violate their duties as mandatory reporters.

### April 3, 2023: Behavior Frontiers Terminates Stone, Citing Her Report to Recipient Rights

49. Stone was sick and worked from home for several days during the week of March 27, 2023.

50. When she returned to work on the morning of April 3, 2023, Stone met with Dan Matas at his request.

51. Matas opened the meeting by reassuring Stone that no retaliation would take place.

52. Matas asked Stone about the assault incident.

53. Matas questioned her about her report to Recipient Rights.

54. Matas asked Stone whether she had filed a report with any agencies.

55. Matas asked Stone whether she had informed McDaniels.

56. Stone confirmed to Matas that she reported to Recipient Rights, and that Recipient Rights would also report to the other agencies. She confirmed that she informed McDaniels of the report after she filed it.

57. Stone proceeded to work a regular day.

58. At 6 o'clock that evening, Matas emailed Stone to inform her that she was terminated for violating an internal policy that staff must consult with HR or the Clinical Director before making any mandated reports.

59. The email from Matas to Stone stated in relevant part:

Hi Samantha,

At Behavior Frontiers, we take the matter of client safety very seriously. We extensively train all of our staff on Mandated Reporter requirements and internal Special Incident Reporting requirements. These procedures and policies are in place to protect the safety of our clients from any mistreatment or abuse. By only making a report on 3/21 to Recipient Rights, you failed to follow internal protocols and external requirements as a mandated reporter, which exposed a client to a potentially dangerous situation, since at the time you believed that a Supervisor wasn't doing anything about a client's abuse by a staff member.

9

> We appreciate you taking action and following your requirement to escalate member concerns to the Office of Recipient Rights, but you failed to follow internal procedures despite being recently reminded of them. In addition, if you believed a client was being abused, you also failed to follow other external requirements.
>
> Since client safety is paramount to the work we do at Behavior Frontiers, we have determined that today, 4/3/23, will be your final day of employment with us.

60. The email seemingly instructed Stone that she was fired for contradictory reasons: both because she made a report in violation of "internal protocol"—that staff must direct all incident reports to HR or the Clinical Director, rather than follow mandatory reports to agencies themselves—*and* because she had violated "other external requirements."

61. Behavior Frontiers fired Stone because she reported credible information about assault of a child to the Office of Recipient Rights, in compliance with her legal duties as a mandatory reporter, but in violation of the Company's "internal protocol" that employees were required to direct mandatory reports to leadership, who would decide whether to submit the report.

62. Clinical Director Jennie McDaniels was subsequently reassigned from Clinical Director for the Autism Center to Clinical Director for in-home services.

63. Employee A was subsequently fired for assaulting a second child.

64. As a result of the retaliatory termination by Defendant Behavior Frontiers, Stone has suffered losses including and not limited to lost wages, lost

10

professional opportunities, other economic and consequential damages, and emotional distress.

## COUNT I
### RETALIATION IN VIOLATION OF THE MICHIGAN WHISTLEBLOWER'S PROTECTION ACT
MCL 15.361 et seq.

65. The Michigan Whistleblowers Protection Act prohibits an employer from discriminating against an employee or terminating an employee's employment who reports or is about to report, verbally or in writing, a violation or a suspected violation of Michigan state law. MCL 15.361 et seq.

66. The Michigan Department of Health and Human Services operates an Office of Recipient Rights that investigates suspected abuse, neglect or exploitation of a recipient of public mental health services in Michigan.

67. Michigan law mandates reporting for suspected abuse, neglect, or exploitation of a recipient of public mental health services in Michigan. MCL 330.1723.

68. The child who was assaulted was a recipient of public mental health services in Michigan.

69. Stone engaged in protected activity under the WPA by her actions, including and not limited to: (a) filing a Recipient Rights complaint with the State of Michigan regarding the assault of an autistic child by a Behavior Frontiers staff member and (b) providing ongoing information to a Recipient Rights Investigator regarding the Behavior Frontiers Autism Center.

70. Behavior Frontiers took an adverse employment action against Stone by terminating her employment.

71. Behavior Frontiers terminated Stone because of her protected activity under the WPA.

72. A causal connection existed between Stone's reports to the Office of Recipient Rights and her termination.

73. Behavior Frontiers terminated Stone the same day that Dan Matas (Chief Compliance and People Officer) met with Stone to verify that she had filed a Recipient Rights complaint without permission from the Clinical Director.

74. Matas expressly stated in the termination email that Stone was terminated for violating the "internal protocol" that employees must direct all incident reports to HR or the Clinical Director, rather than comply with their mandatory reporting duties.

75. Behavior Frontiers would not have terminated Stone if not for her reports to the Office of Recipient Rights.

76. Behavior Frontiers had no legitimate business reason for the adverse employment action because Behavior Frontiers's stated reasons for termination are pretext for unlawful retaliation.

77. As a direct and proximate result of Defendant's unlawful conduct, Stone has suffered and will continue to suffer lost wages and other economic advantages of employment, lost professional opportunities, other consequential damages, and emotional distress.

## COUNT II
### RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 USC § 12203

78. The Americans with Disabilities Act (ADA) prohibits retaliation for engaging in protected activity under the Act.

79. As a professional office of a health care provider or other service provider, Behavior Frontiers is a place of public accommodation under the ADA. See 42 USC § 12181(7)(F).

80. As a person who has been diagnosed with autism, the child who was assaulted is a qualified person with a disability within the meaning of the ADA. See 42 USC § 12102.

81. Advocating for the rights of disabled children to an employer is a protected activity under the ADA. *See Kirilenko-Ison v. Bd. of Ed. of Danville Indep. Sch.*, 974 F.3d 652, 663-664 (2020).

82. Stone engaged in protected activity under the ADA by advocating for the rights of disabled children, including and not limited to: (a) assisting a colleague to file a Recipient Rights complaint with the State of Michigan, (b) filing her own Recipient Rights complaints with the State of Michigan regarding the assault of an autistic child by a Behavior Frontiers staff member, (c) providing ongoing information to a Recipient Rights Investigator regarding the Behavior Frontiers Autism Center, and (d) advocating for the rights of disabled children to her employers.

83. Behavior Frontiers knew of Stone's protected activity. Both Clinical Director McDaniels and Chief Compliance and People Officer Dan Matas met with Stone to discuss her reports to the Office of Recipient Rights.

84. Behavior Frontiers took an adverse employment action against Stone by terminating her employment.

85. Behavior Frontiers terminated Stone because of her protected activity.

86. A causal connection existed between Stone's reports to the Office of Recipient Rights and her termination.

87. Behavior Frontiers terminated Stone the same day that Dan Matas, Chief Compliance and People Officer, met with Stone to verify that she had filed a Recipient Rights complaint without permission from the Clinical Director.

88. Matas expressly stated in the termination email that Stone was terminated for violating the "internal protocol" that employees must direct all incident reports to HR or the Clinical Director, rather than comply with their mandatory reporting duties.

89. Behavior Frontiers would not have terminated Stone if not for her reports to the Office of Recipient Rights.

90. The statements by Clinical Director McDaniels and Chief Compliance and People Officer Matas, and the zoom training directing employees to violate their mandatory reporting duties, demonstrate that Behavior Fronters acted intentionally and with malice or reckless indifference to Stone's federal rights.

91. Behavior Frontiers had no legitimate business reason for the adverse employment action because its sole reason was a company policy that directed employees to violate Michigan mandatory reporting laws.

92. As a direct and proximate result of Defendant's unlawful conduct, Stone has suffered and will continue to suffer lost wages and other economic advantages of employment, lost professional opportunities, other consequential damages, and emotional distress.

**COUNT III**
RETALIATION IN VIOLATION OF THE
REHABILITATION ACT
29 USC §701 ET SEQ.

93. Section 504 of the Rehabilitation Act ("Section 504") prohibits retaliation for engaging in protected activity under the Act. 29 USC § 701 et seq.

94. As a person who has been diagnosed with autism, the child who was assaulted is a qualified person with a disability within the meaning of the Rehabilitation Act.

95. As a corporation or private organization that is principally engaged in the business of providing healthcare and/or social services, Behavior Frontiers owns and operates a "program or activity" within the meaning of Section 504.

96. Advocating for the rights of disabled children to an employer is a protected activity under Section 504. *See Kirilenko-Ison v. Bd. of Ed. of Danville Indep. Sch.*, 974 F.3d 652, 663-664 (2020).

97. Stone engaged in protected activity under Section 504 by advocating for the rights of disabled children, including and not limited to: (a) assisting a colleague

to file a Recipient Rights complaint with the State of Michigan, (b) filing her own Recipient Rights complaints with the State of Michigan regarding the assault of an autistic child by a Behavior Frontiers staff member, (c) providing ongoing information to a Recipient Rights Investigator regarding the Behavior Frontiers Autism Center, and (d) advocating for the rights of disabled children to her employers.

98. Behavior Frontiers knew of Stone's protected activity. Both Clinical Director McDaniels and Chief Compliance and People Officer Dan Matas met with Stone to discuss her reports to the Office of Recipient Rights.

99. Behavior Frontiers took an adverse employment action against Stone by terminating her employment.

100. Behavior Frontiers terminated Stone because of her protected activity.

101. A causal connection existed between Stone's reports to the Office of Recipient Rights and her termination.

102. Behavior Frontiers terminated Stone the same day that Chief Compliance and People Officer Dan Matas met with Stone to verify that she had filed a Recipient Rights complaint without permission from the Clinical Director.

103. Chief Compliance and People Officer Matas expressly stated in the termination email that Stone was terminated for violating the "internal protocol" that employees must direct all incident reports to HR or the Clinical Director, rather than comply with their mandatory reporting duties.

104. Behavior Frontiers would not have terminated Stone if not for her reports to the Office of Recipient Rights.

16

105. The statements by Clinical Director McDaniels and Chief Compliance and People Officer Matas, and the zoom training directing employees to violate their mandatory reporting duties, demonstrate that Behavior Fronters acted intentionally and with malice or reckless indifference to Stone's federal rights.

106. Behavior Frontiers had no legitimate business reason for the adverse employment action because its sole reason was a company policy that directed employees to violate Michigan mandatory reporting laws.

107. As a direct and proximate result of Defendant's unlawful conduct, Stone has suffered and will continue to suffer lost wages and other economic advantages of employment, lost professional opportunities, other consequential damages, and emotional distress.

108. Accordingly, Stone requests the following relief:

   A. An order awarding Stone economic and emotional damages, both past and future;

   B. An order awarding Stone interest, costs, attorney fees and litigation expenses as provided for under the Whistleblower Protection Act;

   C. Punitive damages as provided under the Americans with Disabilities Act;

   D. An order granting Stone all such other relief as the court deems just and equitable.

> Respectfully submitted,
>
> Pitt, McGehee, Palmer Bonanni & Rivers PC
>
> By: /s/ Danielle Y. Canepa
> Danielle Y. Canepa (P82237)

                                                Channing E. Robinson-Holmes (P81698)
Michael L. Pitt (P24429)
*Attorneys for Plaintiff*
117 W. 4th Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
dcanepa@pittlawpc.com
crobinson@pittlawpc.com
mpitt@pittlawpc.com

Dated: June 30, 2023

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA STONE,

       Plaintiff,

                                                          Case No.
                                                          Hon.

vs.

BEHAVIOR FRONTIERS, LLC,
a California corporation,

       Defendant.

---

Danielle Y. Canepa (P82237)
Channing E. Robinson-Holmes (P81698)
Michael L. Pitt (P24429)
Pitt McGehee Palmer Bonanni & Rivers
Attorneys for Plaintiff
117 W. 4th Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
dcanepa@pittlawpc.com
crobinson@pittlawpc.com
mpitt@pittlawpc.com

---

## JURY DEMAND

Plaintiff herein demands a trial by jury of all issues in this cause of action.

                                       Respectfully submitted,

                                       Pitt, McGehee, Palmer Bonanni & Rivers PC

                                       By: */s/ Danielle Y. Canepa*
                                       Danielle Y. Canepa (P82237)
                                       Channing E. Robinson-Holmes (P81698)
                                       Michael L. Pitt (P24429)
                                       *Attorneys for Plaintiff*
                                       117 W. 4th Street, Suite 200
                                       Royal Oak, MI 48067

                              (248) 398-9800
                              dcanepa@pittlawpc.com
                              crobinson@pittlawpc.com
                              mpitt@pittlawpc.com

Dated:  June 30, 2023